UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TASHA M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. C18-454-JPD <br><br> ORDER AFFIRMING THE COMMISSIONER |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a 30-year-old woman with a 10th-grade education and a GED. Administrative Record ("AR") at 479, 548. Her past work experience includes employment as a temporary laborer and movie theater runner. AR at 480. Plaintiff was last gainfully employed in 2007. AR at 480.

On February 24, 2014, Plaintiff applied for SSI payments, alleging an onset date of

ORDER - 1

January 1, 2014.[1] AR at 367, 462-67. Plaintiff asserts that she is disabled due to attention deficit hyperactivity disorder, Asperger's syndrome, asthma, depression, Chiari malformation (type 1), blindness, oppositional defiance disorder, post-traumatic stress disorder, polycystic ovarian syndrome, and pseudotumor cerebri. AR at 478.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 396-404, 408-14. Plaintiff requested a hearing, which took place on August 11, 2016. AR at 294-34. On December 14, 2016, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 144-60. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council.[2] On March 27, 2018, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to February 24, 2014. AR at 297.

[2] Although there is evidence that Plaintiff sought Appeals Council review of the ALJ's decision (AR at 3-7, 459-61), the record does not contain the Appeals Council's decision denying review. Plaintiff's complaint alleges that the Appeals Council denied review on January 24, 2018. Dkt. 4 at 2.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step

ORDER - 3

one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

be awarded.

V.    DECISION BELOW

On December 14, 2016, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since February 24, 2014, the application filing date and amended onset date.

2. The claimant has the following severe impairments: diabetes mellitus; obesity; history of Chiari I malformation and pseudo tumor cerebri; other disorders of the nervous system; low vision; affective disorders; anxiety disorders; and personality disorders.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except for the following limitations. The claimant can occasionally climb stairs/ramps and occasionally balance, but never climb ladders/ropes/scaffolds. She has visual limitations in left near acuity, left far acuity, left depth perception, left accommodation, left color vision and left field of vision, so that, she is limited to monocular vision. She should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. The claimant retains the mental functional capacity to perform both simple and complex tasks. She is limited to work/tasks dealing primarily with objects/things rather than people. She is capable of occasional contact with coworkers for work tasks. She is capable of frequent contact with the general public but each occurrence should limited to 10 minutes or less.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1988, and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[4]

7. The claimant has a limited education and can communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 5

9. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Act, since February 24, 2014, the date the application was filed.

AR at 147-160.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in discounting Plaintiff's subjective statements;

2. Whether the ALJ erred in discounting certain medical opinions;

3. Whether the ALJ erred in discounting Plaintiff's mother's statements; and

4. Whether the ALJ erred at step five in finding that Plaintiff could perform jobs that require functional abilities inconsistent with Plaintiff's RFC.

Dkt. 12 at 1.

## VII. DISCUSSION

A. <u>The ALJ did not err in discounting Plaintiff's subjective statements.</u>

The ALJ discounting Plaintiff's subjective statements for several reasons, specifically: (1) she claimed to have disabling limitations caused by several physical impairments, but the record showed that her symptoms were stable on medication; (2) she claimed to have disabling limitations caused by mental impairments, but the record shows mostly normal mental status findings and improvement of mental symptoms; and (3) her activities were inconsistent with her allegations of disabling symptoms. AR at 153-56. Plaintiff contends that these reasons are not clear and convincing, and are therefore insufficient.

1. *Legal standards*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

ORDER - 6

supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[5] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-

---

[5] In Social Security Ruling ("SSR") 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

    2.        *Daily activities*

Plaintiff contends that the ALJ failed to identify any particular inconsistencies between her allegations and her activities. Dkt. 12 at 4. She is mistaken, however: the ALJ's decision discusses multiple specific inconsistencies. For example, the ALJ noted that Plaintiff alleged "constant" disabling pain and "daily" anxiety attacks, yet also reported an ability to manage her personal hygiene, prepare meals every day, perform household chores, care for her two young children, shop for groceries, eat at restaurants, attend church, plan birthday parties, attend regular appointments, and volunteer in her children's school. AR at 155-56. The ALJ also contrasted Plaintiff's allegation of a need to lie down multiple times per day due to headaches and pain with her reports of daily exercise (walking, riding a bicycle, dance videos). AR at 156. The ALJ noted that Plaintiff alleged debilitating headaches and vision loss, yet reported that she read on her own and every night to her children. *Id*. The ALJ also referenced counseling notes indicating that Plaintiff planned to attend community college. *Id*. Finally, the ALJ found that although Plaintiff alleged that she relied on her mother to complete her activities of daily living, her mother was disabled and "it is inconsistent for a person with the disabilities reported by the claimant's mother to be able to provide all the care/assistance for claimant as she has alleged." *Id*.

Plaintiff argues that her activities could be construed as consistent with her description of her limitations, because she could have completed her activities during the time that she was not lying down or otherwise incapacitated. Dkt. 12 at 7-8. She also notes that she was not able to return to community college as she had planned, due to pain. Dkt. 12 at 8-9. Finally, she contends that the ALJ did not have any information about the extent of Plaintiff's mother's disability, and failed to note that Plaintiff also received assistance from a state-funded

caregiver. Dkt. 12 at 9.

Although Plaintiff posits a different interpretation of the evidence than the ALJ's, she has not shown that the ALJ's interpretation is unreasonable, and therefore has failed to establish error in the ALJ's decision. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). The record contains substantial evidence of Plaintiff describing her activities in a manner inconsistent with her allegations. *See, e.g.*, AR at 676 (Plaintiff reporting feeling "bored" now that her children were both in school, and she planned to spend her free time baking and completing art projects), 1240 (Plaintiff reporting at 12:30 p.m. that she had been cleaning her house since 6 a.m., and that she was planning a 5-6-hour visit to Chuck E. Cheese), 1242 (Plaintiff reporting having fun as a volunteer cashier for six hours, and explaining that she could not get a job as a cashier because she wanted to be in school full-time), 1254 (Plaintiff's report that she is too busy to nap during the day), 1283 (same). These reports, among others cited by the ALJ (AR at 155-56), support the ALJ's finding that Plaintiff's activities were inconsistent with the limitations she alleged. This is a clear and convincing reason to discount Plaintiff's subjective testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

    3.    *Objective medical evidence*

Plaintiff argues that the ALJ's reliance on inconsistent objective medical evidence is not a valid reason to discount her subjective statements because that reason cannot solely support the ALJ's conclusion. Dkt. 12 at 9-10. As discussed *supra*, however, the ALJ's finding is also supported by the evidence of inconsistency between Plaintiff's allegations and

her activities.

Furthermore, the ALJ reasonably found that the objective medical evidence was inconsistent with Plaintiff's allegations, because it showed that her symptoms generally improved with treatment and any residual symptoms did not lead to disabling limitations. AR at 153-54. Plaintiff acknowledges that she occasionally reported improved symptoms, but her symptoms actually fluctuated and therefore did not contradict her allegations. The ALJ cited substantial evidence of improvement with regard to a number of symptoms (*id.*), but even if that evidence could be construed as "cherry-picked," as alleged by Plaintiff (Dkt. 12 at 10), the ALJ's finding with regard to discounting Plaintiff's subjective testimony is supported by substantial evidence of conflict between her allegations and her activities, for the reasons explained *supra*. Any error with regard to the objective medical evidence is therefore harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

B. <u>The ALJ did not err in discounting Plaintiff's mother's statements, because those statements were similar to Plaintiff's statements and the same reasons cited by the ALJ for discounting Plaintiff's testimony apply equally to her mother's statements.</u>

The record contains two statements written by Plaintiff's mother describing Plaintiff's symptoms and limitations. *See* AR at 511-18, 591-93. The ALJ summarized Plaintiff's mother's statements and found them to reiterate Plaintiff's own allegations. AR at 158. Given the similarity between the testimony, the ALJ gave Plaintiff's mother's statements "limited weight" for the same reasons he discounted Plaintiff's testimony. *Id.*

This is a germane reason to discount Plaintiff's mother's statements. *Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ

ORDER - 10

also gave germane reasons for rejecting [the lay witness's] testimony")). Although Plaintiff argues that the ALJ mistakenly assumed that lay witnesses can never independently observe a claimant's pain or other symptoms (Dkt. 12 at 15-16), the ALJ did not so assume. Instead, the ALJ found that in this case, Plaintiff's mother's statements described the same symptoms Plaintiff described, and that therefore the reasons the ALJ discounted Plaintiff's description of her limitations applied equally to Plaintiff's mother's description. AR at 158. The ALJ's findings with regard to Plaintiff's mother's statements are reasonable and supported by substantial evidence, and therefore the ALJ's conclusions shall not be disturbed.

C. <u>The ALJ did not err in discounting the opinions of treating physician Jennifer Azen, M.D.</u>

Dr. Azen completed two form opinions describing Plaintiff's physical limitations, in 2014 and 2016. AR at 951-52, 959-61. In both opinions, Dr. Azen indicated that Plaintiff was limited to part-time sedentary work, with postural and manipulative restrictions, due to several conditions. *Id*. The ALJ discounted these opinions because he found them inconsistent with medical evidence showing improvement with treatment and no indication of significant neurologic/motor/gait deficits. AR at 157. The ALJ also found that Dr. Azen's opinions were inconsistent with Plaintiff's activities, namely caring for her children, volunteer work, shopping, aerobic dancing, bicycle riding, and daily walking. *Id*. Plaintiff argues that these reasons are insufficient to discount Dr. Azen's opinions.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily

ORDER - 11

conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

2. *Inconsistency with objective medical evidence*

Plaintiff argues that the ALJ erred in finding that Dr. Azen's opinions were not corroborated by the objective record related to her neurologic/motor/gait deficits, because Dr. Azen's opinions were based on Plaintiff's pain. Dkt. 12 at 13. But the ALJ cited a treatment note dated just a couple of weeks before Dr. Azen's 2016 opinion, indicating that Plaintiff's pain was at a tolerable level and did not prevent her from engaging in normal activities of daily living with no medication side effects. AR at 157 (citing AR at 966). This is a specific,

ORDER - 12

legitimate reason to discount Dr. Azen's opinion regarding the impact of Plaintiff's pain. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

    3.    *Inconsistency with Plaintiff's activities*

Plaintiff argues that the ALJ erred in finding that her activities contradicted Dr. Azen's opinion, because her sporadic activities were in fact consistent with Dr. Azen's opinion that she could work on a part-time basis. Dkt. 12 at 15. But the ALJ cited Plaintiff's ability to engage in aerobic dance, bicycling, and daily walking, and those activities are inconsistent with Dr. Azen's opinion that Plaintiff could not stand or sit for extended periods of time, bend over, or make repetitive motions. *See* AR at 959. The ALJ did not err in discounting Dr. Azen's opinions in light of this inconsistency. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Because the ALJ provided specific, legitimate reasons to discount Dr. Azen's opinions, the ALJ did not err in weighing Dr. Azen's opinions.

D.    <u>The ALJ did not err at step five.</u>

Plaintiff argues that the ALJ erred in finding at step five that she could perform jobs that required climbing and vision abilities that the ALJ found she did not have. Specifically, Plaintiff notes that the "cleaner II" job requires occasional ascending or descending ladders, stairs, scaffolding, ramps, poles, and the like, but that the ALJ found that Plaintiff could never climb ladders/ropes/scaffolds. Dkt. 12 at 17. Plaintiff also notes that the "laundry laborer" and "laundry worker II" jobs require occasional near visual acuity, but she cannot perform any visual work functions with her left eye. Dkt. 12 at 17-18. Because the ALJ failed to resolve these conflicts between Plaintiff's RFC and the jobs relied upon at step five to find her not

ORDER - 13

disabled, Plaintiff argues that the ALJ's step-five findings are erroneous.[6]

In the RFC assessment, the ALJ found that Plaintiff has "visual limitations in her left near acuity, left far acuity, left depth perception, left accommodation, left color vision and left field of vision, so that, she is limited to monocular vision." AR at 151. The ALJ's hypothetical to the vocational expert ("VE") set out similar vision limitations. *See* AR at 328. In response, the VE testified that a person with Plaintiff's RFC could perform the jobs of laundry laborer and laundry worker II (hereinafter "the laundry jobs"). Plaintiff contends that the VE's testimony deviates from the DOT because the laundry jobs are defined to require occasional near acuity, and because the VE did not explain this deviation, the ALJ erred in relying on the VE's testimony at step five. *See* DOT 361.687-018, *available at* 1991 WL 672992; DOT 361.685-018, *available at* 1991 WL 672987.

As used in the DOT, "near acuity" refers to "[c]larity of vision at 20 inches or less." Selected Characteristics of Occupations Defined in the Revised DOT, app. C (1993). According to the Commissioner, that Plaintiff has limitations in her near acuity in her left eye, but not in her right eye, does not necessarily suggest that she lacks the visual capacity to perform the laundry jobs. Dkt. 19 at 11-12. The Commissioner notes that the record mentioned Plaintiff's ability to read without glasses (Dkt. 19 at 12 (citing AR at 326, 676)), from which the Commissioner infers that Plaintiff's had sufficient vision in her right eye to attain near acuity despite the limitations of her left eye.

---

[6] Plaintiff also argues that the ALJ erred in failing to ask the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Dkt. 20 at 6-7. But the ALJ did ask the VE about this issue. *See* AR at 299-300. The VE stated that any conflicts between her testimony and the DOT was based on her experience as well as information gleaned from the Bureau of Labor Statistics. *Id*.
Furthermore, as explained *infra*, Plaintiff has not identified an actual conflict between the VE's testimony and the DOT, and thus even if the ALJ had failed to ask about conflicts, the error would have been harmless. *See Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007).

ORDER - 14

In reply, Plaintiff argues that the ALJ should have further developed the VE testimony to determine whether a person with monocular vision could perform the laundry jobs. Dkt. 20 at 7. But the ALJ asked the VE to assume that the hypothetical person had monocular vision, and the VE testified that such a person could perform the laundry jobs. AR at 328-30. It does not appear, therefore, that the record contains any "gaps in the evidence of record" that would require further development. Dkt. 20 at 7.

Plaintiff also mentions that her visual impairments were at the Listing level at various points in time before and after the adjudicated period. Dkt. 20 at 8. Even if this is true, it does not establish that the ALJ erred at step three or anywhere else in his decision about whether Plaintiff was disabled *during the adjudicated period.* The evidence cited by Plaintiff does not suggest error in the ALJ's RFC finding that her right eye was unimpaired (and this finding was not challenged in any event), and Plaintiff does not address the evidence of her ability to read on a regular basis. Because Plaintiff has not shown that she lacks the visual capabilities required in the laundry jobs, she has not shown error in the ALJ's finding that she could perform those jobs. The laundry jobs exist in significant numbers in the national economy (see AR at 160 (describing more than 300,000 such jobs nationally)), and thus any error with respect to the cleaner II job is harmless. *See Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (declining to address arguments regarding one of two jobs identified by the ALJ given that the number of positions for one of those jobs constituted a significant number).

## VIII.  CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

ORDER - 15

*Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as Plaintiff suggests, it is not possible to conclude that Plaintiff's interpretation is the only rational interpretation.

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 26th day of February, 2019.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge